IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Raqib Abdul Al-Amin, | ) | C/A No. 0:10-2023-CMC-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Robert M. Stevenson, III, *Warden*, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Raqib Abdul Al-Amin ("Al-Amin"), a self-represented state prisoner, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 22.) Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 23.) Al-Amin filed a response in opposition.[1] (ECF No. 31.) Also pending before the court are motions filed by Al-Amin for summary judgment (ECF Nos. 13 & 31). Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Al-Amin's motions for summary judgment be denied.

---

[1] Approximately five months after Al-Amin filed his response in opposition to the respondent's motion for summary judgment, he filed a document entitled "PETITIONER'S AMENDMENT TO OPPOSITION TO RESPONDENT'S SUMMARY JUDGMENT." (ECF No. 37.) Al-Amin neither sought nor was granted leave to file such a belated amendment. Therefore, the court finds that this filing is not properly before the court. However, even if this amendment were considered, it does not change the analysis, conclusions, or recommendations in this Report.



## BACKGROUND

Al-Amin was indicted on December 10, 1997 in Richland County for murder (97-GS-40-25414). (App. at 1278-79, ECF No. 21-27 at 33-34.) Al-Amin was represented by Douglas S. Strickler, Esquire, and Cynthia Brunson Durham, Esquire, and on February 15-18, 2000, was tried by a jury and found guilty as charged.[2] (App. at 746, ECF No. 21-22 at 121.) The circuit court sentenced Al-Amin to life imprisonment without the possibility of parole. (App. at 756, ECF No. 21-23 at 6.)

Al-Amin filed a direct appeal and was represented by Daniel T. Stacy, Esquire, who filed a brief raising the following issues:

> 1.  Whether the court erred when it overruled appellant's motion for a directed verdict, since there was not substantial circumstantial evidence to sustain the findings that he was guilty, and likewise there was not evidence from which a rational trier of fact could find beyond a reasonable doubt that appellant was guilty, in violation of the federal due process standard?

> 2.  Whether the court erred when it permitted appellant to be impeached with his prior conviction for armed robbery, without reviewing the requirements for admissibility, such constituting an abuse of discretion?

> 3.  Whether the court erred when it refused appellant's motion to introduce evidence which would tend to demonstrate that appellant was not the person who killed the victim?

(ECF No. 21-1 at 4.) On March 3, 2003, the South Carolina Court of Appeals affirmed Al-Amin's conviction and sentence. (State v. Al-Amin, Op. No. 3602, 578 S.E.2d 32 (S.C. Ct. App. March 3, 2003), ECF No. 21-3.) Following the denial of his petition for rehearing, Al-Amin, through counsel

---

[2] Al-Amin's testimony at his June 6, 2007 PCR hearing indicates that he was previously tried twice on these charges, both of which resulted in mistrials. (App. at 1344-45, ECF No. 21-27 at 99-100; see also Trial Tr. Jan. 31-Feb. 4, 2000, App. at 759-1277, ECF No. 21-23 at 9 through ECF No. 21-27 at 32.)



Daniel T. Stacy and Robert Dudek, Esquire, filed a petition for a writ of certiorari with the South Carolina Supreme Court. In his petition, Al-Amin presented the following issues:

1.    Whether the Court of Appeals erred by holding the petitioner's motion for a directed verdict was properly denied, since there was not substantial circumstantial evidence to sustain the findings that he was guilty, and there was not evidence from which a rational trier of fact could find beyond a reasonable doubt that Petitioner was guilty, in violation of the federal due process standard?

2.    Whether the Court of Appeals erred by holding that any conviction for a crime involving dishonesty was automatically admissible as impeachment evidence without any probative value versus unduly prejudicial effect analysis, since Rule 403, SCRE compels this analysis of relevant evidence?

(ECF No. 21-7 at 3.) On October 21, 2004, the South Carolina Supreme Court issued an order denying Al-Amin's petition. (ECF No. 21-9.) The remittitur was issued on October 26, 2004. (ECF No. 21-10.)

On November 30, 2004, Al-Amin filed a *pro se* application for post-conviction relief ("PCR"), which he later amended. (See Al-Amin v. State of South Carolina, 04-CP-40-5551; App. at 1280-1320, ECF No. 21-27 at 35-75.) The PCR court summarized the issues raised in Al-Amin's application as follows:

1.    Ineffective assistance of counsel in that:
   a.    The courts did not understand the trial attorney's contemporaneous objections to ineffective assistance of counsel to defend the Applicant's 14th Amendment right to Due Process.
   b.    Counsel failed to investigate the substantial exculpatory evidence withheld by the prosecutor in violation of Brady.
   c.    Counsel failed to make a contemporaneous objection to the relevancy and admission of the testimony given by the State's lead investigator.
   d.    Counsel failed to suppress all material, relevant evidence enclosed in Brady, including exculpatory evidence as well as the principle and rule for impeachment.
   e.    Counsel failed to object to the solicitor's statements and comments in closing argument.

2.    Ineffective assistance of appellate counsel in that:
    a.    Appellate counsel failed to make a contemporaneous objection to the
        Attorney General's prosecutorial misconduct.

3.    Newly-discovered evidence based on admission of guilt by third-party,
    Wakeel Rasheed.

(App. at 1494-95, ECF No. 21-29 at 45-46.) The State filed a return. (App. at 1321-27, ECF No. 21-27 at 76-82.) On June 6, 2007, the PCR court held an evidentiary hearing at which Al-Amin appeared and testified and was represented by Charlie J. Johnson, Jr., Esquire. (App. at 1328-1474, ECF No. 21-27 at 83 through ECF No. 21-29 at 25.) By order filed November 20, 2007, the PCR judge denied and dismissed with prejudice Al-Amin's PCR application. (App. at 1493-1507, ECF No. 21-29 at 44 through ECF No. 21-30 at 9.)

In his PCR appeal, Al-Amin was represented by Elizabeth A. Franklin, Esquire, Appellate Defender of the South Carolina Commission of Indigent Defense, Division of Appellate Defense, who filed a petition for a writ of certiorari on June 26, 2008 that presented the following issues:

I.    Is Al-Amin [] entitled to a new trial because evidence that the state characterized as "third party guilt," but which was really evidence relating to the quality of the State's investigation of Al-Amin, was improperly excluded from his trial? Should the trial court judge have excluded evidence relating to sperm that was found in the vaginal vault of the victim when the sperm did not match Al-Amin, and should the judge have excluded testimony by the State's lead investigator, J.P. Smith, that police, in murder investigations, typically look first to those closest to the victim?

II.   Should this Court order the DNA in this case to be entered into the NCIC system to remove any doubt that Wakeel Rasheed committed this murder when, at Al-Amin's PCR hearing, he confessed to the murder and gave a very exacting description of both the crime and the location?

(ECF No. 21-11 at 3.) The State filed a return. (ECF No. 21-12.) In an order filed February 11, 2010, the South Carolina Court of Appeals denied Al-Amin's petition. (ECF No. 21-13.) Al-Amin

filed a petition for rehearing which was denied on March 18, 2010.  (ECF Nos. 21-14 & 21-15.)  The

remittitur was issued on April 22, 2010.  (ECF No. 21-16.)

## FEDERAL HABEAS ISSUES

In Al-Amin's federal petition for a writ of habeas corpus, he raises the following issues, as

summarized by the respondent:

**Ground One:**  Actual Innocence/Absence of Evidence
1. Willing to plead guilty to accessory or misprision of a felony.
2. Evidence of flight and sanitation of apartment were incorrectly portrayed as evidence of guilt and had alternate explanations.
3. Claimed Cunningham had returned to apartment before him for items that he had forgotten.
4. Evidence was inconclusive of murder.
   A. Petitioner was never placed at scene.
   B. No motive was suggested by the state.
   C. Neither intent nor premeditation assigned to petitioner.
   D. State never proved petitioner struck any blows.
   E. None of forensic evidence implicated petitioner.
   F. Sperm DNA excluded from evidence which exonerated Petitioner.
   G. Erroneous drug evidence was admitted.
   I. No saliva or fingerprint evidence was taken from crack pipe found on victim.
   J. State's theory was a house of cards.

**Ground Two:**  Ineffective Assistance Trial Counsel
A. Failed to conduct any meaningful pretrial investigation.
1. Failed to record any statement or video with Darryl Cunningham.
2. Failed to interview James Conyers, the victim's live-in boyfriend concerning evidence of bad blood with the victim, recent quarreling or drug debt by the victim.
3. Failed to interview other occupants of apartment complex to gather information concerning victim and Conyers and the nature of their relationship.
4. Failed to conduct any meaningful investigation of Michael Watkins, the apartment manager witness or depose him concerning any inconsistencies in his story to police and trial testimony including:
   A. His whereabouts at the time of the murder.
   B. His relationship with the victim.
   C. His relationship with Jerry Watkins who was seen with Petitioner on day of murder.
   D. His relationship with James Conyers who also disappeared after the murder after a conversations with Watkins.



       E.     Why Watkins reported why he saw petitioner drag what appeared to be a body to the door of his apartment and then contradicted himself and state he saw him drag it to a nearby dumpster.

  5.     Failed to interview James Watkins who knew the victim was alone in the petitioner's apartment at the time of the murder.

  6.     Failed to challenge law enforcement and the prosecution concerning the shockingly incomplete investigation.

  7.     Failed to bring to the jury's attention the smokescreen strategy to create an illusion of guilt which allowed the state to undermine Petitioner's credibility with the armed robbery conviction and present evidence through Cunningham concerning the presence of drugs in petitioner's apartment.

  8.     Failed to bring to jury's attention absence of evidence in that:
       A.     Whether victim's injuries were consistent with a left hand or right hand;
       B.     Whether petitioner could have inflicted the wounds;
       C.     There was an absence of saliva evidence.
       D.     Whether the victim showed any evidence of drug use and what kind;

B.     Failed to present an alibi defense.
  1.     Counsel failed to timely notice an alibi defense;

C.     Failed to engage in pretrial juror investigation or individualized voir dire.

D.     Failed to object to "flight" theory of state;
  1.     Never put fact of flight in proper context.

E.     Failed to call Darryl Cunningham as a defense witness, when court hinted he should do so.  App. at 651.
  1.     Petitioner claims this is the witness who could have exonerated him.

F.     Failed to object to court's jury instructions which stated that malice could be inferred from the use of a deadly weapon, disregarding the principle established in <u>Arnold v. Evatt</u>, 113 F.3d 1352, 1356 (4th Cir. 1997) shifting the burden to the petitioner.
  1.     Claims that <u>Arnold</u> plainly held that malice may not be implied from the use of a deadly weapon in 1997 and counsel disregarded this federal standard in failing to object, even though <u>State v Belcher</u>, 685 S.E.2d 802 (2009) had not been decided.

G.     Failed to demand from the State and court the precise justification for the admission of the prior conviction for armed robbery, particularly when the state suggested on appeal that armed robbery was a crime of dishonesty, which had not been established at the time of the trial.

H.     Failed to acquire or review transcripts from two prior trials.

I.     Failed to challenge the prosecutor's outrageous conduct in the closing argument; including:
      A.     Vouching for the prosecution witnesses
       1.     "Now we know we can believe Mr. Watkins.  We know that credible."  App. at 717.
       2.     "Now if you believe him over Detective J.P. Smith on this, find him not guilty."  App. at 725.



      3.      " And I bet you it's like Mr. Bodman said, you can't count up the lies. And you see him - demeanor and he sat here and cried." App. at 725.

      4.      You'll saw Huie Darryl Cunningham.  Y'all saw the meekness and the mildness of Huie Darryl Cunningham.  Compared to me, obviously I'm not meek and mild, but, I mean, compared to me, he was almost asleep." App. at 724.

   B.     Attacking the petitioner's credibility.

      1.      "Then they say well, a young man that had a prior record.  Well to start with he's an armed robber.  And the judge will charge you that goes to his credibility.  That alone, that prior record.  App. at 718.

      2.      "If you believe the pack of lies from a liquor drinking, drug buying dope smoking pimp, then there's no justice." App. at 716.

      3.      "When I call him liquor drinking, drug-buying, dope smoking pimp, I call it because that's what he is." App. at 724.

      4.      "That may be the only thing I believe he said that was the truth after he said his name.  After he said his name." App. at 716.

   C.     Deliberately appealing to the passion of the jury by making outlandish allegations unsupported by the record:

      1.      "In this shroud produced from the funeral home, Al-Amin funeral home." App. at 717

      2.      "You know there's one thing about Al-Amin I'll give him credit for, he treated her the same in death that he did in life, I'll give him credit for that.  He was consistent with his maliciousness.  Consistent." App. at 719.

 J.     Failed to properly challenge the petitioner's predicate (prior) conviction for armed robbery under the life without parole statute.

      1.      Counsel objected to the application of the LWOP statute on a claim of ineffective assistance of original counsel who did not advise of the consequence of the armed robbery plea, he did not request the trial court to rule the original plea to armed robbery was unconstitutional under <u>Boykin v. Alabama</u>, 295 U.S. 238 (1969).

 K.     Failed to request a jury charge on accessory after the fact to murder or misprision of a felony.


**Ground Three(A):** Ineffective Assistance Appellate Counsel on Direct Appeal

   A.     Failed to demand rehearing to apply the decision retrospective only concerning the use of armed robbery.

   B.     Failed to challenge ruling on third party guilt.

   C.     Failed to challenge that state's failure to:

      1.      Place defendant at scene.

      2.      Establish intent.

      3.      Establish premeditation.

      4.      Establish opportunity.

      5.      Establish motive for murder.

   D.     Failed to allege a material variance in indictment and proof.



E.    Failed to cite the failure to allow petitioner to mount a complete defense citing <u>Chambers v. Mississippi</u> (1973).

**Ground Three(B):** Ineffective Assistance of Appellate Counsel on Collateral Appeal

A.    Failed to note that PCR counsel failed to issue subpoenas to three witnesses critical to defense; Darryl Cunningham (could have exonerated Petitioner), Allen Caldwell (investigator for trial counsel) and J.P. Smith, [the police investigator (why the investigation was incomplete)].

B.    Failed to cite PCR counsel for failing to raise critical issues at the PCR hearing enumerated in the application

    1.    Failed to present any evidence on rule 5/Brady claim.

    2.    Failed to present any testimony challenging his trial counsel's failure to contemporaneously object to the prosecution's prosecutorial misconduct.

    3.    Failed to call Darryl Cunningham.

C.    Failed to challenge PCR counsel's failure to challenge trial counsel's trial strategy.

D.    Failed to challenge PCR order which rested on a mere hunch.

E.    Failed to cite the state's agreement , which was never fulfilled prior to the PCR court's order, to produce conclusive evidence to support inconclusive evidence adduced at the PCR hearing as to whether Wakeel Rasheed was in secure custody in the Department of Corrections at the time of the victim's murder.

    1.    SCDC Employee Mike Stobbe testified that Rasheed who allegedly confessed to the murder was a secure inmate.  He asserts that Rasheed was transferred from Palmer Work Release (an open facility) on September 11, 1997 to Evans Correctional Institution and stated that Rasheed was not employed in Columbia on August 25.  Although the state was given 30 days to provide additional proof, it was not forthcoming.  This was not challenged by appellate PCR counsel.

F.    Failed to note that PCR counsel failed to argue that Wakeel Rasheed testified against his penal interest having nothing to gain by his confession of murder.

G.    Failed to challenge PCR court's findings of fact where the findings were based upon nothing more than intuition and speculation.

H.    Failed to raise the failure of trial counsel to conduct a thorough pretrial investigation.

**Ground Four:** Ex Post Facto Violation

A.    State introduced evidence of armed robbery for purpose of impeachment of Petitioner's credibility.  However, no rule of law allowed its introduction at that time as a crime of dishonesty.  He offered no objection.  The state judge was not advised of this theory under SCRE Rule 609.

    1.    This new tactic may have caused Petitioner to have revised his theory of defense and presented an alibi defense.

    2.    The appellate decision allowing this evidence occurred three years after the trial.  He asserts that his decision should have been applied prospectively only.



**Ground Five(A):** Legal Errors by the Trial Court.
- A.    No individualized examination of jurors ever took place.
- B.    He was denied his right to present a complete defense.
    1. The Court ruling that the attempted introduction of forensic evidence was a veiled attempt to argue third party guilt, but he asserts that they were an attempt to show his innocence.
    2. The Court affirmatively excluded favorable sperm evidence - fraction DNA evidence which excluded Petitioner from any sexual contact with the victim, when the court based its decision to exclude on the state's decision not to include a sexual element to the charged crimes, citing <u>House v. Bell</u>, 126 S.Ct. 2064 (2006).
    3. Court erred in treating petitioner under the life without parole statute when the trial court which sentenced him for armed robbery did not affirmatively advise him that it could be a consequence of his plea to armed robbery that it could be treated as a predicate offense for future crimes under the LWOP statute.
    4. Trial court erred by not charging on alibi (although counsel was ineffective in not raising an alibi defense or requesting an alibi charge), since petitioner denied presence at the scene and the state could not place him there.

**Ground Five(B):** Legal Errors by the PCR Court.
    1. The Court finding that Rasheed's confession to the murder was a fabrication was error because the state did not prove he was in a secure facility and did not explain why he was transferred to a more secure facility after the homicide. Rasheed testified in detail about the homicide and stated he had access to the victim at Lizard's Thicket restaurant in Columbia. The state rebuttal that Rasheed did not sign an agreement to work at Lizards Thicket until after the date of the homicide was not conclusive.

**Ground Six:** Prosecutorial Misconduct
- A.    The state knew it could not establish that petitioner was guilty of murder or present at the scene. It was only through circumstantial evidence.
    1. Deliberately obstructed efforts by Petitioner to exonerate himself by the absence of a complete police investigation.
    2. Deliberately obstructed efforts to admit sperm-fraction DNA evidence in a case that contained a sexual element based upon where the victim was found with pants pulled down. App. at 603-04.
    3. Deliberately distracted the jury from the facts of the case by impugning his credibility with the admission of an armed robbery conviction without any justification for its introduction.
    4. Deliberately distract the jury with an allegation of flight without reminding the jury that flight only suggests some evidence of guilt, but not necessarily the murder itself.
    5. Deliberately embrace a half hearted police investigation which did not evaluate the full range of evidence that would exonerate the Petitioner including James Conyers flight, the collection of fingernail scrapings which



did not occur, the source of the sperm fraction found, the source of the crack pipe, whether Conyers was left or right handed and whether strangulation marks matched his hands.

6. Deliberately neglected unreconciled contradictions in the record of witness Michael Watkins testimony including his relationship with the victim and Jerry Watkins and his whereabouts at the time of the murder.

7. Deliberately clouded the trial with irrelevant information.

8. Prejudiced the petitioner in closing argument by:

    A. Vouching for key prosecution witnesses.

    B. Attacking the petitioner's character and credibility.

    C. Straying far from the facts in evidence in appealing to the passion of the jury.

(See Respt.'s Ret. & Mem. Supp. Summ. J. at 8-19, ECF No. 21 at 8-19; Pet., ECF No. 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.    Habeas Corpus Standard of Review

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Humphries



v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Id. at 785. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas



petitioner must present his claims to the state's highest court." <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997); <u>see also</u> <u>In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases</u>, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). In order to exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." <u>Longworth v. Ozmint</u>, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks & citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. <u>Lawrence v. Branker</u>, 517 F.3d 700, 714 (4th Cir. 2008); <u>Longworth</u>, 377 F.3d 437; <u>see</u> <u>also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.

### D.    Respondent's Motion for Summary Judgment

#### 1.    Procedural Bar

As an initial matter, the respondent argues that portions of Grounds One and Five(A) of Al-Amin's federal habeas Petition are procedurally barred from consideration. Additionally, the respondent contends that Grounds Two, Three(A), Four, Five(B), and Six are barred from federal habeas review. Upon review of the record, the court agrees.



None of the issues raised in these grounds was properly preserved and presented in Al-Amin's direct appeal or in his PCR appeal. Specifically, Al-Amin's arguments that he was willing to plead guilty to "accessory or misprison of a felony" (Ground One(1)); that trial counsel was ineffective (Ground Two); that appellate counsel on direct appeal was ineffective (Ground Three(A)); that an *ex post facto* violation occurred when the state introduced certain impeachment evidence (Ground Four); that the trial court erred in failing to examine the jurors individually, sentencing him pursuant to the life without parole statute, and failing to issue an alibi charge (Ground Five(A)(A), (A)(B)(3-4)); that the PCR court erred in rejecting another individual's confession for the crime which Al-Amin was convicted (Ground Five(B)); and of prosecutorial misconduct (Ground Six) were not presented to the state's appellate courts in either Al-Amin's direct appeal or his PCR appeal. See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Drayton v. Evatt, 430 S.E.2d 517, 520 (S.C. 1993) (stating that issues that could have been raised at trial or in direct appeal cannot be asserted in PCR application absent a claim of ineffective assistance of counsel). Therefore, these issues are procedurally barred unless Al-Amin can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Picard v. Connor, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding").

Al-Amin appears to respond that Ground Two, which raises claims of ineffective assistance of counsel, was presented to the appellate courts based on a statement by the State in its return to Al-



Amin's petition for writ of certiorari from the PCR court, which stated that "all of the issues put forth by [Al-Amin in his Petition] could be, or were raised within his direct appeal."  (ECF No. 21-12 at 10; <u>see also</u> Petr.'s Resp. Opp'n Mot. Summ. J., ECF No 31-1 at 21.)  Al-Amin misconstrues this statement.  Al-Amin raised only two issues in his petition for writ of certiorari from the PCR court, neither of which raised any allegations that his counsel was ineffective.

To the extent that Al-Amin's response can be construed to allege that a fundamental miscarriage of justice will occur if all of his claims are not considered, the court finds that this argument is conclusory and unsupported. (Petr.'s Resp. Opp'n Summ. J., ECF No. 31-1 at 20, 21.)  A petitioner may establish a fundamental miscarriage of justice by showing that he is actually innocent of the crime of the crime for which he was convicted.  However, to establish "actual innocence," a petitioner must produce new evidence that was not available at trial to establish his factual innocence.  <u>Royal v. Taylor</u>, 188 F.3d 239 (4th Cir. 1999); <u>see also</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 299, 327-28 (1995) (stating that to demonstrate "actual innocence," a petitioner must present "new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt").  Al-Amin's bald assertion, without more, does not satisfy this standard.  <u>Royal</u>, 188 F.3d 239.

Moreover, to the extent that Al-Amin contends that several of these grounds were not properly exhausted due to PCR counsel's failure to preserve these grounds for appeal or PCR appellate counsel's failure to include these grounds on appeal, these allegations are insufficient to demonstrate cause.  "[T]here is no constitutional right to an attorney in state post-conviction proceedings." <u>Coleman</u>, 501 U.S. at 752.  Accordingly, there can be no right to effective assistance of counsel where there is no constitutional right to counsel.  <u>Wainright v. Torna</u>, 455 U.S. 586 (1982).  Since there is no right to effective assistance of counsel in state PCR proceedings,



ineffective assistance of PCR counsel or PCR appellate counsel cannot serve as cause for Al-Amin's default. Coleman, 501 U.S. at 753-55; see also Sidebottom v. Delo, 46 F.3d 744, 751 (8th Cir. 1995) (stating that the failure of a petitioner's PCR counsel to preserve grounds for appeal cannot constitute cause); Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992) ("Ineffectiveness of counsel does not provide sufficient cause to excuse procedural default when counsel is not constitutionally mandated."). Accordingly, the court cannot excuse Al-Amin's procedural default and concludes that these grounds are procedurally barred.[3]

### 2.     Remaining Grounds

Having determined that the above-discussed grounds are procedurally barred, the following grounds remain for the court's consideration:  Ground One(2-4), Ground Three(B), and Ground Five(A)(B)(1-2).

### a.     Ground One(2-4)

In this Ground, Al-Amin alleges that he is actually innocent of the crime and points to specific pieces of evidence that he alleges do not support his conviction.  The court, like the respondent, interprets this claim to reflect the allegations in his direct appeal challenging the trial court's denial of his motions for a directed verdict and the sufficiency of the evidence.  See Herrera v. Collins, 506 U.S. 390, 404 (1993) (stating that a claim of actual innocence is not a freestanding

---

[3] Even considering Al-Amin's "amendment" to his response in opposition, which arguably also asserts that the ineffectiveness of his trial counsel and counsel on his direct appeal warrant consideration of these grounds, the court, having carefully reviewed these arguments, finds that Al-Amin has failed to demonstrate cause and prejudice. See Smith v. Murray, 477 U.S. 527, 535 (1986) (stating that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default") (internal quotation marks & citation omitted); see also Edwards v. Carpenter, 529 U.S. 446 (2000) (stating that the failure of counsel to present an issue on direct appeal must be exhausted in a collateral proceeding as a claim of ineffective assistance of counsel to establish cause for the default).



claim cognizable on federal habeas review, but merely a "gateway through which a habeas petitioner

must pass" to have an "otherwise barred unconstitutional claim considered on the merits").

When reviewing the sufficiency of the evidence to support a conviction, the critical inquiry

is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also McDaniel v. Brown,

130 S. Ct. 665, 673 (2010) (*per curiam*) ("Jackson requires a reviewing court to review the evidence

'in the light most favorable to the prosecution.' ") (quoting Jackson, 443 U.S. at 319).  Where there

are conflicting inferences, the reviewing court must presume " 'that the trier of fact resolved any

such conflicts in favor of the prosecution, and must defer to that resolution.' " McDaniel, 130 S. Ct.

at 673  (quoting Jackson, 443 U.S. at 326).  In evaluating a Jackson sufficiency of the evidence claim

in a federal habeas petition, the relevant inquiry is "whether a state court determination that the

evidence was sufficient to support a conviction was an objectively unreasonable application of [the

standard enunciated in] Jackson."  Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (internal

quotations and citations omitted) (alterations in original); see also McDaniel, 130 S. Ct. at 673-74

(evaluating a Jackson claim in accordance with the standard of review set forth in § 2254(d)(1)).

In rejecting Al-Amin's claim that the evidence was insufficient for a jury to find guilt beyond

a reasonable doubt, the South Carolina Court of Appeals discussed the evidence presented and found

that the State had presented substantial circumstantial evidence to warrant submitting the case to a

jury.  See State v. Al-Amin, 578 S.E.2d 32, 35-37 (S.C. Ct. App. 2003); (ECF No. 21-3 at 4-7).  The

appellate court pointed out the following evidence:

> Watkins[, the manager of Al-Amin's apartment complex,] observed Al-Amin
> dragging something out of his apartment that was "consistent with being a [human]



body" wrapped in a pink blanket. Watkins found this same pink blanket containing the victim's body in the dumpster closest to Al-Amin's apartment later that day.

\*   \*   \*

The police discovered a construction bolt with the victim's blood on it in the closet in Al-Amin's apartment. Investigator Bales testified that "the gouge marks into the victim's head looked like they were the same size as the head of that bolt." Dr. Sally A. Harding, the pathologist who performed the autopsy on the victim, described four deep injuries to the victim's face and head. Harding stated a heavy object being swung with force generally causes the types of injuries sustained by the victim. Harding declared three of the four injuries were 2.8 centimeters long, which is the same size as the bolt found in Al-Amin's apartment. When asked whether the bolt was consistent with the length of the injuries to the victim's head, Dr. Harding responded: "Yes, that would be consistent with the length of the injury and the type of implement that could have inflicted this type of full-thickness laceration." Harding observed marks on the victim's neck which were consistent with manual strangulation. At the time Al-Amin reported to the police station, he had scratches on the left side of his face, on his cheek and lips, which were indicative of a struggle.

Upon searching Al-Amin's apartment, the police noticed the apartment had been cleaned and there was a smell of mothballs about the apartment. Further, the police detected human blood on the shower curtain and carpet inside the apartment. Al-Amin's bed had no blanket or bedspread on it. Darryl Cunningham professed he saw Al-Amin with the victim in Al-Amin's apartment around 2:30 p.m. that day and that Al-Amin and the victim were alone when Cunningham left. At the scene, police observed that the victim's body was fairly limp and the blood was still wet and appeared to be fresh.

Al-Amin, 578 S.E.2d at 35-36 (alterations in original). The appellate court also noted that Al-Amin

had fled the scene. Id. at 36. Based on this evidence, especially the fact that Al-Amin attempted to

conceal the body and fled from the scene, the appellate court held that there was substantial

circumstantial evidence and that the trial court properly denied Al-Amin's motion for a directed

verdict. Id. at 37.

While Al-Amin may argue that the circumstantial evidence could lead to a different

conclusion and may point to the lack of direct evidence, the evidence discussed by the state appellate

court was sufficient for any rational trier of fact to find Al-Amin guilty, beyond a reasonable doubt,

of murdering the victim. Further, Al-Amin has failed to demonstrate that the state court



unreasonably misapplied clearly established federal law.  Accordingly, Al-Amin is not entitled to habeas relief on this ground.

### b.    Ground Three(B)

In this Ground, Al-Amin raises numerous allegations that his PCR appellate counsel was ineffective.  However, this ground is not cognizable in a federal habeas corpus action.  Section 2254(i) specifically states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  Moreover, there is no constitutional right to habeas counsel in state collateral proceedings.  See Barraza v. Cockrell, 330 F.3d 349, 352 (5th Cir. 2003); Weeks v. Angelone, 176 F.3d 249, 274 (4th Cir. 1999) (stating that "this Court does not recognize a constitutional right to counsel on state habeas").  Accordingly, Al-Amin is not entitled to habeas relief on this ground.

### c.    Ground Five(A)(B)(1-2)

In this portion of Ground Five, Al-Amin alleges that the trial court denied him a complete defense by excluding DNA evidence.  "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (internal quotation marks & citation omitted).  "While the Constitution [] prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."  Id. at 326.  This principle is applicable to rules that regulate the admission of evidence demonstrating third party guilt.  Id. at 327.



On direct appeal, Al-Amin argued that the trial court erred in excluding evidence that "James Conyers, an individual that lived in the apartment with the victim, had been evicted" and that "DNA testing had excluded Al-Amin as a source of DNA obtained from a sperm fraction that had been taken from the victim."[4] Al-Amin, 578 S.E.2d at 44; (see generally ECF No. 21-3). Al-Amin sought to introduce the proffered testimony of Officer Joe Philip Smith to establish that Conyers had been evicted and to testify that the first place police look for a suspect once a murder victim is identified is her immediate family or immediate surroundings. The state appellate court found no error by the trial court in denying the admission of this evidence. Specifically, the court found that the evidence concerning Conyers was not relevant, "at most, would merely cast a 'bare suspicion' on Conyers," did not show Conyers's guilt, and was not inconsistent with Al-Amin's culpability. Al-Amin, 578 S.E.2d at 45. Further, with regard to the DNA evidence, the appellate court found that there was no allegation that the victim had been sexually assaulted by the perpetrator and that Al-Amin's assertion that finding a crack pipe in the victim's crotch area "made it reasonable to infer that there was a sexual component to the crime" was "implausible and conjectural." Id. Therefore, the appellate court held that the trial court properly rejected this evidence because it was not inconsistent with Al-Amin's guilt and did not raise a reasonable inference or presumption as to Al-Amin's innocence. Id.

Having reviewed the record in this matter and the arguments by the parties, the court concludes that Al-Amin has failed to demonstrate that the state court unreasonably misapplied

---

[4] The trial court did permit Al-Amin to introduce DNA evidence that excluded him as a source of the DNA sample taken from under the victim's fingernails. (App. at 397-400, ECF No. 21-20 at 7-10.)



clearly established federal law[5] or that its decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). Accordingly, Al-Amin is not entitled to habeas relief on this ground.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 22) be granted and Al-Amin's motions for summary judgment be denied (ECF Nos. 13 & 31).

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 12, 2011
Columbia, South Carolina


*The parties' attention is directed to the important notice on the next page.*

---

[5] The court further observes that in <u>Holmes</u>, the Untied States Supreme Court found that the South Carolina Supreme Court erred in affirming the trial court's denial of evidence of third party guilt by accepting a rule that shifted the trial court's focus from the probative value or potential adverse effects of the defendant's evidence of third party guilt to the strength of the prosecution's case. While <u>Holmes</u> was decided by the United States Supreme Court after the appellate court decided Al-Amin's case, there is no indication that the appellate court relied on the rule rejected by the United States Supreme Court in <u>Holmes</u>. Further, the United States Supreme Court cited several rules with approval, including South Carolina's rule in <u>State v. Gregory</u>, 16 S.E.2d 532 (S.C. 1941), which the appellate court specifically relied on in Al-Amin's case.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).